MESO v. VILEY, Former Collector of Internal Revenue.

No. 2798.

United States District Court
D. Idaho, S. D.

Jan. 5, 1952.

James F. Butler, Boise, Idaho, for plaintiff.

John A. Carver, U. S. Dist. Atty., Paul S. Boyd and Herman J. Rossi, Asst. U. S. Dist. Attys., all of Boise, Idaho, for defendant.

CLARK, District Judge.

This action arises under U.S.C. Title 26, § 116(a), Sec. 116(a), Internal Revenue Code.

The plaintiff is a citizen of the State of Idaho and he brings this action against the Defendant and for a cause of action alleges; that he, the Plaintiff, on the tenth day of December, 1946, entered into a contract of employment with Morrison-Knudsen Afghanistan, Inc., a Nevada Corporation, to work in the Kingdom of Afghanistan for a period of twenty-four months, and in pursuance of this agreement departed from the United States of America during the month of December, 1946, and arrived in Afghanistan on December 26, 1946; that he continued to work for the full two year term until approximately January 1, 1949; that he then took a vacation in Spain and returned to Kandahar, Afghanistan, on or about March 1, 1949, and at that time renewed the contract for an additional twelve months which was terminated on October 8, 1949. Plaintiff then visited for several months in Spain and returned to the United States in March, 1950.

That when Plaintiff executed his first contract of employment, above mentioned, he intended to enter upon and continue for an extended and indefinite period a career of employment in foreign countries, beginning with his employment in the Kingdom of Afghanistan and any other foreign country where he could find gainful employment and that he intends to continue his career of employment in foreign countries and is holding himself in readiness to resume such employment.

That he received for services performed in Afghanistan the sum of $7,234.70 for the taxable year of 1947, and $8,088.69, for the taxable year of 1948.

That for these two years he claimed the same as exempt from taxation and prays judgment in the amount of $1,416.50, paid for the taxable year of 1947, and the further sum of $1,364.63, paid for the taxable year of 1948.

The Defendant denies that the amounts claimed are exempt from taxation and prays for a dismissal of this action.

The statute, Sec. 116(a), I.R.C., under which this action is brought provides:

"(a) Earned income from sources without the United States.

"(1) Foreign resident for entire taxable year. In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income as defined in paragraph (3); but such individuals shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection."

It will be noted that one claiming the benefit of this section must establish "to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year."

The Plaintiff was living in Boise, Idaho, at the time he entered into the contract (exhibit no. 1) to go to Afghanistan for twenty-four months. This contract provided, "that in event employee's contract is completed or terminated before the expiration of said period this contract shall thereupon terminate and said employer shall only be obligated to pay employee to the date of such termination—and salary during the return trip to the United States." It is evident that the return to the United States was contemplated by the parties and the two year period was limited by the conditions above.

Also this contract provided:
"10. Termination of Contract

"If the services of Employee are not satisfactory to Employer or if he is not qualified for the position for which he is hired, or is negligent in his duties, or displays bad temper, or is or becomes addicted to the use of alcoholic drinks or drugs, or is insubordinate, or contracts venereal disease, Employee may be discharged by Employer and this contract shall terminate forthwith. * * *"

It is also provided in this contract:
"14. Withholding From Salary

"Employee agrees that Employer shall withhold from the salary of Employee an amount equal to the transportation costs referred to in Paragraph 8. However, not more than one-third of Employee's earnings for any month shall be so withheld. The amount thus withheld shall be refunded to Employee upon completion of this contract. If Employee quits or is discharged for any of the reasons specified in Paragraph 10 hereof, the amount withheld shall be applied by Employer against the costs which Employer may incur in returning Employee to United States and the balance remaining, if any, shall be refunded to Employee."

It will be noted that this contract provides for the return of the Plaintiff to the United States and does not support in any way Plaintiff's contention that he was taking up a bona fide residence in Afghanistan.

Plaintiff worked under this contract for two years, visited Spain and returned to Afghanistan and worked for eight months.

Plaintiff testified (21 T):

"Q. And did you quit? A. I was surplus.

"Q. You were surplus? A. Yes.

"Q. That was a reduction of forces, the work was nearly completed? A. No.

"Q. They just laid you off? A. Yes, and the Company told us maybe they call us back. They called me last summer and I wouldn't go back.

"Q. They ran out of work for you to do? A. That particular time they laid off most of the people.

"Q. Then where did you go, did you come back here? A. I went to Spain.

"Q. And you stayed how long? A. About four months.

"Q. And then you came where? A. The United States.

"Q. You got here when? A. In January, 1950,—no, in March, 1950.

"Q. You have been here since then? A. Yes sir.

"Q. I guess you did go to Mexico for a little while? A. Yes, a couple of months.

"Q. Have you done any work since you have been back? A. No.

"Q. You haven't worked at all in this country? A. No.

"Q. Have you had an opportunity to go back to work in a foreign country since you got back? A. Yes.

"Q. And why didn't you do it? A. I want to know where I stand before I go back.

"Q. As soon as this case is heard, do you have any intention to resume your foreign work? A. Yes sir.

"Q. Do you have any definite employment in mind? A. Yes, but I don't know where.

"Q. The Morrison-Knudsen Company has work for you? A. Yes sir.

"Q. Will that be in the United States? A. In South America some place, in some foreign country.

"Q. The possibility is that you may work in Canada? A. Maybe.

"Q. Or in South Africa? A. Maybe.

"Q. Those are definite possibilities? A. Yes sir."

Then in the face of this testimony, in answer to a leading question, the Plaintiff testified (23 T):

"Q. As a matter of fact, did you have positive intentions to change your residence to Afghanistan? A. Yes sir."

There is no more evidence to support this answer than there would have been to support his bona fide intentions to claim as his residence in Alaska, Honolulu, Mexico, Canada, South America or South Africa, if he found work there.

Then on page (24 T) Plaintiff testified: "Q. Now, did you contemplate the possibility that work might terminate in Afghanistan? A. Then I would go to some other foreign country, or some other foreign job."

Then another leading question brings the Plaintiff back to Afghanistan (25 T).

"Q. In the event that the job did come to an end in Afghanistan what did you intend to do then? A. Stay there and work.

"Q. Stay in Afghanistan? A. Yes.

"Q. Even if the job came to an end? A. As long as the job was going.

"Q. What did you intend to do if the job ended? A. To go to some other foreign country and work."

I can find nothing in the foregoing to show that there was a bona fide intention on the part of the Plaintiff to take up a bona fide residence in Afghanistan.

This Plaintiff was a citizen of Spain and became a naturalized citizen of the United States and in doing so assumed the obligations as such a citizen, still he testified (30 T):

"Q. Morrison-Knudsen has this job on Lucky Peak—if they wanted to hire a powder man would you go to work there? A. No.

"Q. You would not? A. Not as long as I can go on a foreign job.

"Q. They pay more money on these foreign jobs? A. Yes sir.

"Q. Your sole interest is the money? A. Yes sir.

"Q. And you go anywhere you can make more money? A. Yes."

There is nothing in the evidence of this case except that the Plaintiff wants to work in a foreign country, any foreign country, as long as he can escape his duties as a citizen of the United States in the payment of his income tax and it was his intention to go anywhere he could get a job (32 T). He planned not to return to the United States as long as he could find work.

Plaintiff was asked (36 T): "Q. You had no intention to stay in Afghanistan? A. Yes. I stayed but if there is no work I go."

He established no residence there except the barracks with all the men. He did not use the banking facilities there, he paid no taxes or any assessments of any nature to the Kingdom of Afghanistan. He banked his money at Boise, Idaho. In a letter (Defendant's exhibit 3) to Mr. Stack Yribar, an employee of the bank at Boise, Idaho, where Plaintiff deposited his money, Plaintiff stated: "I was planning on coming home after a year but now plan on staying my contract of 2 years."

The Court asked a few questions of the Plaintiff (41 T).

"The Court: Why did you make application to become a citizen of the United States? A. I like this country and I want to vote.

"The Court: You prefer to make this country your home, you like it better than other countries? A. I like the United States.

"The Court: Do you remember whether you said you intended to make this your home permanently, you stated that when you got your citizenship papers, do you remember that? A. Yes.

"The Court: Was it your intention to make the United States your home, your residence, and a place to live? A. I got no home now.

"The Court: You didn't, or rather, you don't feel that you are a man without a country, do you? A. No.

"The Court: What was your home or nationality before you took up citizenship in the United States, before you received your citizenship papers? A. Spain.

"The Court: You wanted to renounce your allegiance to Spain and be a citizen of the United States? A. Yes sir.

"The Court: You wanted to become a citizen and resident of the United States? A. Yes sir.

"The Court: Why did you want to be a citizen of the United States? A. Because we have more liberty.

"The Court: You told the Court at that time that you wanted to make your home here in this country? A. Yes sir.

"The Court: Have you changed your mind on that? A. I never changed my citizen papers, but I changed my mind about working in a foreign country."

It is interesting to note that the Plaintiff, in answer to one of the questions, stated, "I got no home now."

The only question presented is whether or not the Plaintiff was a bona fide resident of Afghanistan during the years in question. All the facts in this case tend to indicate a lack of intention to establish a bona fide residence in the Kingdom of Afghanistan or in fact any other foreign country. The Court is of the opinion that the Tax

Collector acted properly in assessing the tax and that the Plaintiff has not established by the burden of proof required that he was a bona fide resident of the Kingdom of Afghanistan, or any other foreign country during the taxable years in question and that the Plaintiff should be denied recovery.

Counsel for Defendant may prepare findings of fact, conclusions of law, and judgment for submission to the Court for approval.